<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TROY SWINT,<br><br>        Petitioner,<br><br>        v.<br><br>BEVERLY HASTINGS, et al.,<br><br>        Respondents. | Civil Action No. 12-3753 (JBS)<br><br>**OPINION** |

**APPEARANCES**:

    TROY SWINT, 699700B
    East Jersey State Prison
    Lock Bag R
    Rahway, New Jersey 07065
        *Petitioner Pro Se*

    ESSEX COUNTY PROSECUTOR
        by:   Andrew Robert Burroughs, Esq.
    50 West Market Street, 3rd Floor
    Newark, New Jersey 07102
        *Attorneys for Respondents*

**SIMANDLE, Chief Judge**

    Troy Swint filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of conviction filed in the Superior Court of New Jersey, Essex County, on April 6, 1998, and amended on March 8, 2000, imposing a term of imprisonment of life plus 15 years, with a 30-year period of parole ineligibility.  The State filed an Answer with the record, and a supplemental answer and record, and seeks dismissal of this §2254 petition for untimliness. Petitioner filed a Reply arguing that equitable tolling is warranted.   After carefully reviewing the

arguments of the parties and the state court record, this Court will dismiss the Petition with prejudice as time barred and deny a certificate of appealability.

## I.  BACKGROUND

**A.  The Crime**

Swint challenges a sentence of a life plus 15 years in prison, with a 30-year period of parole ineligibility, after a jury found him guilty of the kidnapping and aggravated assault of Rashon Grundy, as well as possession of a handgun for an unlawful purpose.  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state court factual findings are presumed correct unless rebutted by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  As Swint has not attempted to rebut the factual findings of the New Jersey courts with respect to the crime, this Court will rely on those findings.  See State v. Swint, 328 N.J. Super. 236 (App. Div., 2000), certif. denied, 165 N.J. 492 (2000) (table).

After Cory Smith's brother was shot to death in Newark on June 18, 1996, Cory Smith heard that "Drea" and "Wise" were the killers.  Because Corey Smith believed that Rashon Grundy was friends with "Drea" and "Wise," Corey Smith and Corey Lewis borrowed a U-Haul truck from James Harris, the cousin of Corey Lewis.  Rashon Grundy testified that, at about 12:30 a.m. on the morning of June 19, 1996, five men wearing ski masks and carrying guns stormed into the living room of the house he occupied with his family, while he was on the floor with his young niece.  The men placed a garbage bag over Grundy's head and forcefully put him into the truck, demanding that he take them to the home of "Wise."  He testified that the truck stopped and one of the men removed him from the van at 19th Street and 17th Avenue, took him to the third floor

2

of an abandoned building, and told him to get down on his knees. The Appellate Division described the assault as follows:

> A mask was placed over his head. One of the assailants cut the victim's ear. The victim took off his mask and saw Swint standing by the window. A sheet was placed over the victim's head and one of the assailants kept asking "who killed my brother", "where do Wise live at?", "where do Andre live at?", and "where Andre girlfriend live at?". When he told the assailants he did not know where these people were, the assailants began to torture him. They cut off his ears, cut his back, neck, hand and arm, and shot him above the knee and in the ankle.
>
> When the victim realized that the room was quiet, he was able to struggle down the stairs, out of the building, and managed to get around the corner to his brother's house.

Swint, 328 N.J. Super. at 245.

Rashon Grundy's brother took him to the hospital. At about 1:30 a.m., Newark Detective Calvin Parkman interviewed Rashon Grundy, who told Parkman that Corey Smith and "Troy" committed the assault. "Parkman further testified that the victim told him that Troy pulled his mask off and he was able to look 'right in his face.'" Swint, 328 N.J. Super. at 247. Later that morning the police found the U-Haul truck which had been rented by James Harris, who told the police that he had lent it to his cousin, Corey Lewis, and Corey Smith. At about 9:00 a.m., Parkman arrested Corey Smith and Troy Swint who were traveling together by car.

**B.      The State Court Proceedings**

A grand jury indicted Troy Swint, Corey Smith, and Corey Lewis for kidnapping, aggravated assault, attempted murder, and other charges. Corey Lewis died prior to trial and Swint was tried with Corey Smith. The jury found Swint guilty of first-degree kidnapping, second-degree aggravated assault, third-degree possession of a weapon for an unlawful purpose, and second-degree possession of a handgun for an unlawful purpose. By judgment filed on April

3

6, 1998, the trial judge sentenced Swint to life imprisonment plus 20 years, with 30 years of parole ineligibility. Swint appealed, and on February 15, 2000, the Appellate Division of the Superior Court of New Jersey affirmed the conviction and remanded for resentencing. See State v. Swint, 328 N.J. Super. 236 (App. Div. 2000). By amended judgment entered on March 8, 2000, the trial judge imposed a sentence of a life plus 15 years in prison, with a 30-year period of parole ineligibility. On July 28, 2000, the New Jersey Supreme Court denied certification. See State v. Swint, 165 N.J. 492 (2000) (table).

Swint filed his first post-conviction relief ("PCR") petition in the trial court on February 23, 2002.[1] After counsel was appointed and filed a brief, the trial judge denied relief on April 4, 2006. Swint appealed, and the Appellate Division affirmed on July 30, 2008. See State v. Swint, 2008 WL 2901845 (N.J. Super. Ct., App. Div., July 30, 2008). The New Jersey Supreme Court denied certification on November 14, 2008. See State v. Swint, 197 N.J. 14 (2008) (table).

In the meantime, on November 30, 2006, Swint filed a motion to correct an illegal sentence in the trial court. The trial court denied the motion on January 8, 2007, (ECF No. 18-3 at 53), and the Appellate Division affirmed on July 9, 2009. See State v. Swint, 2009 WL 1954128 (N.J. Super. Ct., App. Div., July 9, 2009). Swint also filed a second PCR petition in the trial court on January 8, 2009. (ECF No. 10-12 at 125.) The trial court denied the second PCR petition on

---

[1] Swint signed the first PCR petition on February 13, 2002. (ECF No. 21-1 at 76.) He states in the brief filed in support of his § 2254 Petition that "[o]n the date of February 23, 2002, petitioner filed his first petition for Post-Conviction-Relief (PCR)[.]" (ECF No. 11 at 5.) Similarly, Swint states in his brief filed in the Appellate Division on appeal from the order denying his second PCR petition that he filed his first PCR petition on February 23, 2002. (ECF No. 10-12 at 7.)

4

June 25, 2012, (ECF No. 10-11 at 2-20), and the Appellate Division affirmed on July 25, 2013. See State v. Swint, 2013 WL 3820865 (N.J. Super. Ct., App. Div., July 25, 2013). The New Jersey Supreme Court denied certification on March 14, 2014. See State v. Swint, 217 N.J. 292 (2014) (table).

**C. Procedural History of § 2254 Petition**

On June 13, 2012, Swint signed his § 2254 Petition and presumably handed it to prison officials for mailing to the Clerk on that date. (ECF No. 1 at 6.) Swint challenges his conviction on the following grounds, which are set forth in his brief in support of the Petition as follows:[2]

> Ground One: TRIAL COUNSEL'S FAILURE TO DEMAND A WADE HEARING DENIED PETITIONER HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS.
>
> Ground Two: TRIAL COUNSEL'S REFUSAL TO PURSUE SUPPRESSION OF THE TAINTED OUT-OF-COURT IDENTIFICATION DENIED PETITIONER HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO A FAIR TRIAL.

(ECF No 11 at 2, 11, 25.)

The State filed an Answer arguing, inter alia, that the Petition is untimely, the Petition fails to state a federal claim, and Swint is not entitled to habeas relief on the merits. (ECF Nos. 10, 14.) Swint filed an "Amended Motion for Reargument Pursuant to Rule 28 U.S.C. 2244(d)(1)," which this Court construes as his Reply, arguing that equitable tolling of the statute of limitations is warranted. (ECF No. 22.)

## II. STATUTE OF LIMITATIONS

---

[2] The Court notified Swint of his rights to amend the Petition to include all available federal claims in accordance with Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). (ECF No. 2.)

The AEDPA imposed a 365-day statute of limitations on the filing of a § 2254 petition, which limitations period begins to run on the latest of the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence . . . .

28 U.S.C. § 2244(d)(1).

Section 2244(d)(2) tolls the 365-day limitations period for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). An application is "filed" when it "is delivered to, and accepted by, the appropriate court officer for placement into the official record." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (citations omitted). An application is "properly" filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as rules prescribing "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Id. at 8-9 (citations omitted).

**A.   Calculation of the Statute of Limitations**

In this case, the statute of limitations is governed by § 2244(d)(1)(A). The New Jersey Supreme Court denied certification on direct review on July 28, 2000, see State v. Swint, 165 N.J.

6

492 (2000) (table), and the time to file a petition for certiorari in the United States Supreme Court expired 91 days later on October 27, 2000. The statute of limitations began to run on October 28, 2000, see Gonzalez v. Thaler, 132 S.Ct. 641, 653-54 (2012); Wali v. Kholi, 131 S. Ct. 1278, 1282 (2011); Lawrence v. Florida, 549 U.S. 327, 332-333 (2007); Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003), and ran for 365 days until it expired on October 27, 2001. As Swint did not file his first PCR petition in the trial court until February 23, 2002,[3] almost four months after the statute of limitations had expired, the first PCR petition did not statutorily toll the limitations period. See Long v. Wilson, 393 F.3d 390, 394-95 (3d Cir. 2004) (state post-conviction review petition had no effect on tolling because the limitations period had already run when it was filed); Schlueter v. Varner, 384 F.3d 69, 78-79 (3d Cir. 2004) (same). Accordingly, in the absence of equitable tolling, the 365-day statute of limitations expired on October 27, 2001.

**B.     Is Equitable Tolling Warranted?**

The one year statute of limitations is subject to equitable tolling. See McQuiggin v. Perkins, 133 S.Ct. 1924, 1931 (2013); Holland v. Florida, 560 U.S. 631, 645 (2010); Ross v. Varano, 712 F.3d 784, 798-800 (3d Cir. 2013). A court extends the remedy of equitable tolling "sparingly," when "principles of equity would make the rigid application of a limitation period unfair." Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80, 89 (3d Cir. 2013) (citations and internal quotation marks omitted). A habeas "'petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" McQuiggin, 133 S.Ct. at 1931

---

[3] See infra n.1.

(quoting Holland, 560 U.S. at 649) (internal quotation marks omitted).  A court must "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case."  Holland, 560 U.S. at 650.

Swint argues that the attorney who represented him on direct appeal improperly failed to file Swint's first PCR petition before the federal 365-day limitations period expired, even though Swint asked the attorney to file a PCR petition.  Swint alleges that by letter dated June 16, 2000, he asked the attorney to file a PCR petition in the event that the New Jersey Supreme Court were to deny certification on direct appeal.  (ECF No. 22.)  In the June 16, 2000, letter attached to Swint's reply, Swint states:  "I'm writing this letter to put you on notice that should the New Jersey Supreme [C]ourt deny me [c]ertification I want you to file my Motion for Post Conviction Relief.  I know you said you would file it for me in the event that something bad should happen, but by the way things look I just wanted to remind you that I wanted it to be done."  (ECF No. 22 at 6)  Swint argues that the attorney is responsible for the untimely filing:  "Although the foul-up if there was one was petitioner's attorney, under the circumstances it would be grossly unfair to penalize petitioner so greatly where the delay was occasioned not by petitioner, but by counsel."  (ECF No. 22 at 3-4.)  He further asserts that, "[i]f there is an oversight, petitioner contends that because of the conduct of others, he was lulled into inaction and that therefore there is an estoppel resulting from the conduct."  Id. at 5.

"[A] garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling."  Holland, 569 U.S. at 652 (citations and internal quotation marks omitted).  Although extraordinary circumstances may be

found "for 'serious instances of attorney misconduct,'" Christenson v. Roper, 135 S.Ct. 891, 894 (2015) (quoting Holland, 560 U.S. at 651-52), in this case, the attorney's alleged failure to file Swint's first PCR petition within 365 days of the date on which Swint's conviction became final constitutes a garden variety claim of excusable neglect that does not rise to the level of an extraordinary circumstance.[4] See McQuiggin, 133 S.Ct. at 1931; Holland, 560 U.S. at 649.

    Swint himself was aware of the necessity for prompt filing of his PCR petition, as evidenced by his letter to counsel on June 16, 2000, supra. After the New Jersey Supreme Court denied certification of his appeal on July 28, 2000, petitioner has not suggested he was unaware of that fact and the need to file his PCR motion in Superior Court. Petitioner does not claim that his attorney misled him to think that the PCR petition had been filed when it was not. These circumstances did not prevent petitioner from inquiring into the status of the PCR petition and seeking new counsel if he was concerned that his attorney was not getting it filed. The neglect by his attorney does not rise to the level of serious attorney misconduct that could trigger equitable tolling of the one-year period of § 2254(d)(1)(A). Swint cites no other circumstances that stood in his way to prevent timely filing and, after reviewing the record in this case, this Court discerns no basis to equitably toll the statute of limitations. Because Swint filed his § 2254 Petition after the 365-day statute of limitations expired and he has not shown that extraordinary circumstances prevented him from timely filing, this Court will dismiss the § 2254 Petition as time barred.

---

[4] Other potentially extraordinary situations may be found on the basis of the petitioner's "inability to read or understand English, combined with denial of access to translation or legal assistance," Pabon v. Mahanoy, 654 F.3d 385, 400 (3d Cir. 2011), and "where a court has misled a party regarding the steps that the party needs to take to preserve a claim." Munchinski v. Wilson, 694 F.3d 308, 329-330 (3d Cir. 2012) (quoting Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005)).

### III.   CERTIFICATE OF APPEALABILITY

The AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court denies a certificate of appealability because jurists of reason would not find it debatable that dismissal of the Petition as time barred is correct.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

### IV.   CONCLUSION

This Court dismisses the Petition with prejudice as untimely and denies a certificate of appealability.

    s/ Jerome B. Simandle
    **JEROME B. SIMANDLE**
    **Chief Judge**

Dated:   **August 31, 2015**